**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

SCOTT MYERS,

                                    Plaintiff,

        v.                                                    1:19-CV-325
                                                              (LEK/CFH)
THE MUNICIPALITY OF GREENE COUNTY,
SHAUN GRODEN, ED KAPLAN, KIRA
POSPESEL, PATRICK LINGER,

                                    Defendants.

_____

**APPEARANCES:**

Scott Myers
5603 Route 32, Room 14
Catskill, New York 12414
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION & ORDER

### I.  Procedural Background

        On May 1, 2019, the undersigned issued a Report-Recommendation & Order

granting plaintiff's application to proceed in forma pauperis and recommending that

plaintiff's claims be dismissed.  Dkt. No. 5.  As relevant here, the undersigned

recommended dismissal with prejudice for plaintiff's apparent First Amendment claims

involving Kaplan's denial of plaintiff's Freedom of Information Law ("FOIL") requests

and opposing of poor person status in violation of the First Amendment.  See Dkt. No.

5.  The undersigned further recommended dismissal without prejudice and with

opportunity to amend: (1) false arrest, false imprisonment, and malicious prosecution claims arising out of the January 2019 arrest unless plaintiff could overcome the Heck bar; (2) false arrest, false imprisonment, and malicious prosecution claims arising out of earlier, overturned convictions should plaintiff be able to demonstrate the timeliness of such claims; (3) First Amendment retaliation claim against defendant Kaplan should plaintiff be able to overcome the Heck bar; (4) First Amendment claim relating to the order of protection should plaintiff be able to "demonstrate that the order of protection was not validly obtained," overcome the Heck bar, demonstrate "a sufficient connection between the order of protection and his alleged protected conduct," and demonstrate that Kaplan was acting under the color of state law, rather than as a private individual; (5) claims against Shaun Groden, Kira Pospesel,[1] and Patrick Linger, to demonstrate their personal involvement; (6) Monell claims against the Municipality of Greene County; and (7) Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment claims for failure to meet the pleading requirements of Fed. R. Civ. P. 8 and 10.  See generally Dkt. No. 5.

On May 21, 2019, plaintiff filed objections to the Report-Recommendation & Order.  Dkt. No. 8.  On June 6, 2019, plaintiff filed an amended complaint.  Dkt. No. 9. On June 17, 2019, Senior District Judge Kahn terminated as moot the May 1, 2019, Report-Recommendation & Order "except to the extent that it grants Plaintiff's IFP application," and referred the amended complaint to the undersigned for consideration.

---

[1] Plaintiff also refers to this defendant as Kira Prospel within the amended complaint.  See Dkt. No. 9.  However, as the caption uses the spelling Pospesel, the Report-Recommendation & Order will reflect that spelling.

Dkt. No. 11.  Thus, presently pending before the undersigned is review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915.  Dkt. No. 9.

## II.  Legal Standard

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that  . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  See FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . .;
> (2) a short and plain statement of the claim showing that the

3

> pleader is entitled to relief; and
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

In deciding whether a complaint states a colorable claim, a court must extend a measure of deference to pro se litigants, Nance v. Kelly, 912 F.2d 605, 606 (2d Cir.1990) (per curiam), also referred to as "special solicitude."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).  However, the court also has an obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed.  See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to

shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).   However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).  In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff an opportunity amend the complaint as long as there is a possibility that an amendment would be able to cure the identified defects.  See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### III.  Amended Complaint[2]

Although the undersigned advised plaintiff that any amended complaint must be

---

[2] Unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

a complete pleading, including all factual allegations and legal claims he intended to pursue, as it would supercede and replace the original pleading in its entirety, dkt. no. 5 at 19 n.9, the amended complaint does not fully reallege all facts and claims raised in the original complaint.[3]  See Dkt. No. 9.  Instead, plaintiff's amended complaint appears to respond directly to the May 1, 2019, Report-Recommendation & Order, as it is styled more like objections, rather than a complete and independent pleading.  Id.  However, in light of special solicitude as well as judicial efficiency, for purposes of this § 1915 review only, the undersigned will read the amended complaint together with the original complaint.

Generally, plaintiff's amended complaint arises from his January 17, 2019, arrest at a Greene County legislature meeting.  Dkt. No. 9.  Plaintiff essentially argues that because he actively opposes Greene County's plan to build a jail, and because he is an "internally displaced refugee" from the September 11, 2001, terrorist attacks, defendants have been retaliating against him.  Id.  First, plaintiff claims that defendant Kaplan has been retaliating against him for these two reasons by blocking his e-mails to "@discovergreene.com," arguably in violation of his First Amendment right to petition the government for redress of grievance.  Id. at 6.  Plaintiff further argues that, in retaliation for his same exercise of his allegedly protected speech, Kaplan obtained an order of protection against him that bars him from communicating with most county government officials and entering the county government building.  Id.  Plaintiff further

_____

[3]  For a review of the original complaint and the sufficiency of the claims therein, reference is made to the May 1, 2019, Report-Recommendation & Order.  Dkt. No. 5.

6

realleges his claims that, in retaliation for plaintiff's exercise of his First Amendment

rights in opposing the jail plan, Kaplan opposed his applications for poor person relief,

and that the denial of the ability to proceed with poor person status effectively barred

him from being able to litigate claims in state court.  Plaintiff also contends, without

elaboration, that Kaplan "aided [his] eviction from 414 Main Street."  Dkt. No. 9 at 13.


### A. <u>Heck</u>

In the May 1, 2019, Report-Recommendation & Order, the undersigned indicated

that it appeared that plaintiff was seeking to pursue claims of false arrest, false

imprisonment, and malicious prosecution against defendant Kaplan arising out of his

January 2019 arrest, apparently for disorderly conduct and trespass, at a Greene

County legislature meeting.  <u>See</u> Dkt. No. 5 at 5, 9, 10.  Plaintiff appeared to contend

that Kaplan arranged his arrest due in retaliation for plaintiff's protected speech of

opposing a plan to build a jail in Greene County.  <u>Id.</u> at 9.  The undersigned indicated

that it was unclear from the complaint whether charges remained pending as a result of

that arrest, and that unless plaintiff is able to demonstrate that there are no criminal

charges pending, such claims would appear to be barred by <u>Heck v. Humphrey</u> as a

decision in his favor would call into question any charges or potential future conviction

arising from this arrest.  Dkt. No. 5 at 7.

In <u>Heck v. Humphrey</u>, the Supreme Court of the United States created a

jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions

> whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizant under § 1983.

Heck v. Humphrey, et al., 512 U.S. 477, 486-87 (1994).

In his amended complaint, plaintiff contends that Heck is "likely irrelevant" to his case, suggesting that it is "not relevant any longer because a) the arrest and claim is defective (all courts and judges recused), b) the NYS Office of Court Administration never reassigned the case and c) the required hearings were never timely held" and "since all courts and judges and attorneys recused the case is in legal limbo, or for the purposes of this civil rights case, moot." Dkt. No. 9 at 5, 7. Plaintiff further argues that the "issue has timed out, the criminal claims and the temporary Order of Protection does [sic] not meet the requirements of a legal order from a court since it has no court, since all judges and courts recused, since no timely hearing was held." Id. at 5.

However, plaintiff has failed to demonstrate that a court of law has dropped the charges arising out of the January 2019 arrest or declared them invalid. Although plaintiff indicates that he is currently seeking a declaration that the temporary order of protection is "moot" in an Article 78 proceeding before Albany Supreme Court Judge Margaret Walsh, he has not indicated the outcome of that proceeding or that he has sought a determination on what appear to be pending charges resulting from the January 2019 arrest. Dkt. No. 9 at 5. Appended to plaintiff's amended complaint is a

letter dated April 26, 2019, from Coxsackie Town Court, indicating that there would be an appearance on May 20, 2019, for the charges of resisting arrest (PL 205.30), disorderly conduct (PL 240.20 3), and trespass (PL 140.05).  Dkt. No. 9-7 at 11. Plaintiff does not provide any argument or evidence to demonstrate that the Coxsackie Town Court dismissed his criminal matters, that any court has ruled on these charges in any form, or that he has successfully sought dismissal of the criminal charges.  See generally dkt. no. 9.  As plaintiff has failed to demonstrate that Heck does not apply, for the reasons set forth in the May 1, 2019, Report-Recommendation & Order, Dkt. No. 5 at 7-10, and reiterated here, it is recommended that insofar as plaintiff's amended complaint may be read as (1) seeking to proceed on claims for false arrest, false imprisonment, malicious prosecution relating to the January 16, 2019, arrest; or (2) contending that the January 2019 arrest amounted to First Amendment retaliation, perpetuated by defendant Kaplan or other defendants, due to plaintiff's protected conduct of opposing the plans for the Greene County jail, these claims be dismissed without prejudice.  The undersigned recommends that, due to his pro se status, plaintiff be given one final opportunity to amend these claims within this action; however, as plaintiff has already amended his complaint once based on Heck and has demonstrated its inapplicability.

## B.  Remaining First Amendment Claims

In the May 1, 2019, Report-Recommendation & Order, the undersigned construed plaintiff's complaint as attempting to contend that defendant Kaplan violated

the First Amendment by retailing against him for his allegedly protected speech by (1) denying his FOIL requests; (2) opposing his poor person applications; and (3) filing an order of protection against him on behalf of several county employees/officials.  See Dkt. No. 5.

## 1.  FOIL

The undersigned recommended dismissing with prejudice plaintiff's claims that Kaplan violated the First Amendment by opposing his FOIL requests in retaliation for plaintiff's protected speech.  The undersigned concluded:

> plaintiff does not explain how the denial of his FOIL requests violated his constitutional rights; however, reading the complaint liberally, it appears plaintiff may be attempting to contend that Kaplan violated his First Amendment right to petition the government insofar as he denied or failed to fully respond to his FOIL requests.  It is well settled that "'[a] failure to comply with FOIL procedures does not, in and of itself, violate any rights protected by the First Amendment.'" Ladeairous v. Attorney General of the State of New York, 9:14-CV-250, 2014 WL 12649838, at *5 (N.D.N.Y. June 4, 2014) (internal citation omitted).

Dkt. No. 5 at 11.   In his amended complaint, although he does not explicitly state as such, it is arguable that he is also attempting to set forth a due process claim relating to the FOIL denials insofar as he alleges that, "[w]hile well settled in other instances, the denial of FOILs here is strategic and harmful.  In many public offices and institutions the FOIL requests are handed by someone neutral, someone not gaming the FOIL requests.  Mr. Kaplan choose [sic] to directly participate, which is the intent and the issue."  Dkt. No. 9 at 7.

"The only constitutional claim arising from alleged FOIL violations is one of a deprivation of property under the Due Process clause of the Fourteenth Amendment." Burroughs v. Petrone, 138 F. Supp. 3d 182, 219 (N.D.N.Y. 2015) (internal citation and quotation marks omitted).  Here, plaintiff fails to demonstrate if, or how, he has a property interest in any of the documents allegedly denied.  Id. (citing Blount v. Brown, No. 10-CV-1548, 2010 WL 1945858, at *2 (E.D.N.Y. May 11, 2010) ("[A] plaintiff has no property interest in obtaining FOIL documents")).   To the extent plaintiff wishes to pursue claims that Kaplan erroneously denied his FOIL requests,

> "The appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information law is a state court proceeding pursuant to N.Y. C.P.L.R. Article 78 upon exhaustion of administrative remedies." Schuloff v. Fields, 950 F. Supp. 66, 67-68 (E.D.N.Y. 1997); Posr v. City of N.Y., No. 10-CV-2551, 2013 WL 2419142, at *14 (S.D.N.Y. June 4, 2013) ("Under New York state law, if an agency or government official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue an administrative appeal or seek remedies in state court pursuant to N.Y. C.P.L.R. Article 78." (citing N.Y. Pub. Off. Law § 89)).

Ladeairous, 2014 WL 12649838, at *4.   As plaintiff's amended complaint intimates that he has commenced an Article 78 proceeding relating to the Greene County jail issue, such venue may be appropriate.[4]

Arguably, to the extent plaintiff argues that Kaplan denied FOIL requests in retaliation for plaintiff's exercise of protected speech and an attempt to chill his exercise

---

[4] It is unclear to the undersigned whether plaintiff has already raised this claim in his Article 78 proceeding.  However, whether or not he has already sought review of this claim in state court does not impact the undersigned's determination that plaintiff has not presented a constitutional claim with respect to the FOIL denials.

of speech or in violation of his Fourteenth Amendment right to due process, it is

recommended that these claims be dismissed with prejudice for failure to state a claim

upon which relief can be granted.

## 2. Poor Person Relief

In his original complaint, plaintiff argued that Kaplan opposed his poor person

applications, apparently as retaliation for plaintiff's protected speech relating to the

Greene County Jail.  See Dkt. No. 1.  The undersigned recommended that, insofar as

plaintiff contended that Kaplan violated his First Amendment rights by opposing his

applications for poor person status, such claim be dismissed with prejudice.  Dkt. No. 5

at 12.  The undersigned concluded:

> Insofar as plaintiff contends that Kaplan opposed his poor
> person applications, presumably for actions plaintiff commenced
> in state court, it is unclear as to how opposing poor person
> applications violated plaintiff's constitutional rights. It appears
> plaintiff is attempting to argue that Kaplan's opposing the
> applications for poor person relief, lead the court to deny the
> applications, ultimately resulting in his being able to litigate his
> state court actions, and, thus, denying him his First Amendment
> right to petition the government. Id. Thus, plaintiff appears to be
> suggesting that Kaplan's opposition to such requests or
> applications was improper because it stepped beyond his role as
> a county attorney. Compl. at 6. It is clear that Kaplan would not
> have the final decision-making authority on his applications, as
> such applications would be decided by the Judge. As Kaplan
> was not the party who decided whether to grant or deny the poor
> person status, it cannot be said that any denial of such request is
> attributable to Kaplan. Regardless of whether it was "proper" for
> Kaplan to weigh in on plaintiff's applications, plaintiff fully fails to
> demonstrate how Kaplan's mere opposition to the applications
> amounts to any denial of plaintiff's constitutional rights. The
> deciding judge had the ability to accept or reject plaintiff's

> applications, and even if the judge was
> "swayed" by Kaplan's opposition, he did not make the ultimate
> determination.  However, even if, *arguendo*, Kaplan was the
> party who had the final say in whether plaintiff received poor
> person status, the Court is "unaware of any First Amendment
> right to file an action without first paying a court's reasonable
> filing fee (when in forma pauperis status has not been granted)."
> See, e.g., Jackson v. Pfau, 10-CV-1484
> (GTS/DEP),  2011 WL 13127988, at *12 n. 17 (N.D.N.Y. May 12,
> 2011).

Dkt., No. 5 at 11-12.

In his amended complaint, plaintiff argues that Kaplan "aided defeat" of his poor

person applications" and that his "intent is to silence my (effective) opposition the

largest infrastructure project ever undertaken by Greene County."  Dkt. No. 9 at 7.

Plaintiff further contends that this act, among others, is "beyond his authority as

County Attorney" and was "intended to block [his] access to government."  Id. at 6.  He

again suggests that such alleged conduct is retaliatory, at least in part due to his status

as an "internally displaced refugee[] from terrorism" when his home in New York City

was "rendered uninhabitable by the terroristic acts."  Id. at 6.  Very liberally read,

plaintiff again appears to argue that by opposing plaintiff's poor person applications in

unspecified court proceedings, Kaplan is attempting to prevent plaintiff from being able

to commence legal proceedings that would call into question the Greene County Jail

project.  Id. Although plaintiff's amended complaint does not explicitly state as such, it

can be inferred that plaintiff is arguing that the denial of poor person status prevents

him from proceeding with litigation against the jail because he cannot afford to proceed

in court without poor person status.

Insofar as plaintiff argues that defendant Kaplan violated his First Amendment

rights by retaliating against him for his protected speech by opposing his applications
to proceed as a poor person, the undersigned recommends dismissal of this claim with
prejudice for failure to state a claim upon which relief can be granted and for the
reasons stated in the May 1, 2019, Report-Recommendation & Order, incorporated
above.   Dkt. No. 5 at 11-12.

### 3.  Order of Protection

Plaintiff arguably realleges his argument that Kaplan obtained an order of
protection against him, and on behalf of several county employees and officials, in
retaliation for plaintiff's First Amendment protected speech.  Dkt. No. 9 at 6-9.  Plaintiff
argued in the original complaint that the order of protection effectively barred him from
entering the county office building or contacting most or all county officials, and that
Kaplan obtained the order of protection in order to prevent him from petitioning the
government for redress of grievances.  Id. at 6.  Plaintiff also argues that Kaplan has
blocked plaintiff from sending e-mails to "@discovergreene.com," which he arguably
alleges also violates his First Amendment right to petition the government for redress
of grievances.  Id.

In the May 1, 2019, Report-Recommendation & Order, the undersigned
concluded that plaintiff must demonstrate that the order of protection was not validly
obtained.  Dkt. No. 5 at 13.  The undersigned also noted that "if plaintiff is arguing that
the order of protection is invalid, it creates a Heck issue because, should plaintiff argue
that the order of protection is invalid, and if plaintiff has any criminal charges pending

14

or any convictions as a result of the arrest, a finding in plaintiff's favor would necessarily invalidate that conviction." Id. Further, the undersigned observed that plaintiff did not allege whether Kaplan obtained the order of protection in his official capacity and under color of state law or as a private individual. Id. at 14.

In the amended complaint, plaintiff contends that the order of protection "was preplanned and, it is argued, not validly obtained as proven by the almost immediate recusals of all involved." Dkt. No. 9 at 6. He further argues, "[a]s to the linkage between the jail and the order of protection, by now the Court notices that this is the suppression intent. I am in Albany County Court at this moment (May 13, 2019) arguing my Article 78 against the jail before Hon. Margaret Walsh." Id. at 7.

Plaintiff argues, without support, that the order of protection was not validly obtained, and done so with retaliatory intent, rather than out of necessity. Dkt. No. 9 at 6. In response to the undersigned's directive to demonstrate whether or not the order of protection was validly obtained, plaintiff contends only that it was "not validly obtained as proven by the almost immediate recusals of all involved." Id. This statement fails to demonstrate the invalidity of the order of protection. Further, plaintiff appears to argue that he has challenged the validity of the order of protection in town or county court; however he has not indicated to this Court whether any determination has been made on the order of protection. See generally dkt. no. 9. It is further unclear whether plaintiff's January 2019 arrest stemmed from an alleged violation of the order of protection. As noted in the May 1, 2019, Report-Recommendation & Order, until plaintiff overcomes the Heck bar, it would appear that any First

15

Amendment claim relating to the issuance of the order of protection may also barred by Heck because, if the arrest stemmed from an alleged violation of the order of protection, a determination by this Court as to the invalidity of the order of protection would necessarily impact his related criminal charges.

Similarly, to the extent that plaintiff's e-mails to "@discovergreene.com" were "blocked" due to the order of protection, plaintiff's apparent argument that this conduct violates his First Amendment right to petition the government for redress of grievances may also be barred by Heck.  If the e-mail "blocking" stemmed from the order of protection, and this Court determined the "blocking" to be invalid, it would be making a determination on the legality of the order of protection, and, potentially, plaintiff's arrest, should it be determined that the arrest was connected to any violation of the order of protection.[5]

Accordingly, insofar as plaintiff argues that the order of protection was obtained in retaliation for his exercise of protected speech in violation of the First Amendment and/or that the order of protection violates the First Amendment because it effectively bars him from petitioning the government for redress of grievances, it is recommended that these claims be dismissed without prejudice and with opportunity to amend only if

---

[5]  It is noted that it appears from the amended complaint that plaintiff is seeking review of the "validity" of the order of protection in Coxsackie Town Court.  Dkt. No. 9-7 at 11.  It is unclear whether any kind of decision has been issued by the court.  If so, this Court lacks subject matter jurisdiction to review such a ruling, or matters that are "inextricably intertwined" with such ruling, under the Rooker-Feldman doctrine.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 486 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-16 (1923). "The essence of the Rooker-Feldman doctrine is that inferior federal courts have no authority to review judgments of state courts in judicial proceedings and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." Gilmore v. Greene Cty. Dep't of Soc. Servs., No. 1:07-CV-0919 (GLS)(RFT), 2007 WL 4180749, at *2 (N.D.N.Y. Nov. 20, 2007).

plaintiff is able to overcome the Heck bar.

## C. Personal Involvement

The undersigned recommended dismissal of all claims against defendants Groden, Prosposel, and Linger for failure to demonstrate their personal involvement in any violation of plaintiff's constitutional rights. Dkt. No. 5 at 15-16. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir.1991)). "In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant." Burns v. Trombly, 624 F. Supp. 2d 185, 200 (N.D.N.Y. 2008).

In plaintiff's amended complaint, he asserts only that Shaun Groden "blocked email and then did proceed to slowly and persistently attack me using his attorney and the legislature." Dkt. No. 9 at 9. As for Patrick Linger, the amended complaint alleges that "Patrick Linger did preplan and cause the arrest, did plot, and did knowingly sign false affidavits and did otherwise act to repress my access to government, and by methods that violate constitutional protections, and did cause harm as a result." Id. at 10. As to Kira Pospesel, plaintiff's amended complaint alleges that she "did prevent my transition from jail and prison and only maintained my indigency and homelessness. This contradicts intelligence. Yesterday's 'fair hearing' included Commissioner Pospesel's work with the other defendants to end my homeless

17

housing.  She partners with County."  Id.

Plaintiff's conclusory claims against Groden, Pospesel, and Linger fail to sufficiently establish their personal involvement.  Plaintiff does not provide sufficient factual support for his claims nor explain how these alleged actions violated his constitutional rights.  Addressing first plaintiff's claim against Groden, it is unclear if plaintiff is alleging that Groden blocked plaintiff's e-mails to a personal e-mail account or a government e-mail account, nor does he provide any context surrounding this statement.  Dkt. No. 9 at 9.  Although the complaint discussed Kaplan's involvement in "blocking" e-mails to @discovergreene.com, it is further unclear if plaintiff is contending that Groden was also somehow involved in blocking e-mails to this account or another. Similarly, plaintiff's claim that Groden "slowly and persistently attack[ed]" him "using his attorney and his legislature" is also conclusory and provides no context as to how Groden "attacked" plaintiff and how such "attacks" violated plaintiff's constitutional rights.  Id.  Next, plaintiff's claims in the amended complaint against Patrick Linger are also fully conclusory.  Id. at 10.  To the extent that plaintiff is attempting to allege that Linger was somehow involved in his arrest at the January 2019 legislature meeting, plaintiff has not provided sufficient factual context for the Court to assess Linger's involvement.  Further, for the reasons discussed above, until plaintiff overcomes the Heck, any claims relating to the validity of his arrest or resulting pending charges cannot proceed.  Finally, plaintiff's claims against Kira Pospesel are also without factual support or context.  Dkt. No. 9 at 10.  He does not provide any facts to establish how Pospesel was involved in "prevent[ing]" his transition from jail and prison, how she

"maintained" his "indigency and homelessness," and how these alleged acts violated plaintiff's constitutional rights.  Dkt. No. 9 at 10.  In addition, plaintiff has not provided the time during which these alleged violations occurred, as such, the Court cannot assess the timeliness of any such potential claims.  Id.  Thus, plaintiff's two sentences in the amended complaint fail to establish Pospesel's personal involvement in any violation of plaintiff's constitutional rights.  Id.

"Plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." Mitchell v. New York, No. 9:14-CV-0934 (TJM/DEP), 2014 WL 12656096, at *4 (N.D.N.Y. Dec. 11, 2014).  "A complaint based upon a violation of Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law." Hernandez v. Sposato, No. 12-CV-2530 (SJF/WDW), 2014 WL 3489818, at *4 (E.D.N.Y. July 9, 2014).

Accordingly, it is recommended that all claims against Groden, Linger, and Pospesel be dismissed without prejudice for failure to state a claim upon which relief can be granted based on his failure to sufficiently establish their personal involvement. It is recommended that plaintiff be given one final opportunity to amend to sufficiently specify these defendants' personal involvement by providing sufficient factual support, and context for how these facts support a constitutional violation by parties acting under the color of state law.

### D.  Monell Claim

In the May 1, 2019, Report-Recommendation & Order, the undersigned noted

that plaintiff named the "Municipality of Greene County" (hereafter "Greene County") as

a defendant, but noted that the complaint

> fails to identify, let alone explain, the existence of a
> municipal policy or custom or a failure to train that lead to
> the violation of his constitutional rights nor has he provided
> any factual support to suggest that a municipal policy was
> the "moving force" behind any alleged constitutional
> violation. His mere inclusion of Greene County as a
> defendant does not suffice to set forth a Monell claim.

Dkt. No. 5 at 17.  In addition, the undersigned concluded that, "plaintiff's statement that

Kaplan's denying his FOIL requests 'show a pattern of coverup, corruption and actual

harm by policy' does not suffice to demonstrate the existence of an official municipal

policy or custom that is 'so persistent and widespread as to practically have the force

of law' and is conclusory."  Id.  Thus, the undersigned recommended that Greene

County be dismissed without prejudice and with opportunity to amend "as the current

complaint fails to set forth a colorable Monell claim against Greene County."  Id. at 18.

In the amended complaint, plaintiff argues that the

> Municipality of Greene, as shown is a 'habit and custom,' is
> a valid defendant.  It is a corporation, not protected by the
> Eleventh Amendment, and acts in concert to force a jail
> debt they cannot afford and harms me for working within
> the democratic process to properly debate.  This clearly
> provides the thresholds for a Monell Claim, inter alia.  The
> record is contiguous since we arrived in Greene County as
> internally displaced refugees from terrorism.

Dkt. No. 9 at 10.  Read liberally, the undersigned understands plaintiff's amended

complaint to argue that Greene County should be held liable for approving, or attempting to approve, a plan for the Greene County jail that plaintiff believes is fiscally unwise, as well as its employees' actions of opposing his attempts to voice opposition to such plans through retaliation. Id.  Plaintiff's amended complaint fails to establish a Monell claim against the Greene County.

First, insofar as plaintiff contends that the Eleventh Amendment does not apply to the county defendant, "although section 1983 suits against municipalities are not barred by the Eleventh Amendment, see Monell v. New York City Department of Social Services, 436 U.S. 658 (1978), such entities 'cannot be held liable [under section 1983] unless a municipal policy or custom caused the constitutional injury' to the plaintiff." Kampfer v. County of Fulton, 107 F.3d 3, 1 (2d Cir. 1997) (emphasis added) (internal citation omitted). Thus, plaintiff can only proceed against the county under a Monell claim.  Second, plaintiff's allegations is his amended complaint do not suffice to state a Monell claim.  Plaintiff states in a conclusory manner that the County has a "habit or custom," but does not identify such a habit or custom beyond claiming that Greene County has a "pattern" of retaliating against him since he moved to the area, due to his "internally displaced refugee status."  Dkt. No. 9 at 10.

To the extent plaintiff is attempting to argue that "policy or custom" is that Greene County, apparently through its employees, have a history of retaliating against him and his family due to their status as "internally displaced refugees," or due to his protected speech, "municipalities . . . may not be held liable for the actions of their employees unless constitutional violations result from the municipality's official policy

21

or custom, which [plaintiff] has failed to properly allege in his complaints." <u>Johnson v. County of Washington</u>, No. 1:10-CV-1497 (GLS/DRH), 2011 WL 2160895, at *2 (N.D.N.Y. May 27, 2011) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978).

> In establishing causation, a plaintiff need not show that "[t]he policy or custom used to anchor liability [was] contained in an explicitly adopted rule or regulation." <u>Sorlucco v. New York City Police Dep't</u>, 971 F.2d 864, 870 (2d Cir. 1992); <u>see also</u> <u>Bostic v. City of Binghamton</u>, 2006 WL 2927145, at *5 (N.D.N.Y. Oct.11, 2006) (quoting <u>Sorlucco</u>). Municipal liability may be demonstrated if the deprivation resulted from: (1) an officially promulgated policy endorsed or ordered by the municipality, <u>see</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); (2) a custom or practice that is so pervasive and widespread that the municipality had either actual or constructive knowledge of it, <u>see</u> <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); (3) actions taken or decisions made by the municipal employee who, as a matter of state law, is responsible for establishing municipal policies with respect to the area in which the action is taken, <u>see</u> <u>Praprotnik</u>, at 129-30; or (4) the failure of the municipality to train its employees such that the failure rises to the level of deliberate indifference to the constitutional rights of others, <u>see</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  <u>Perfetto v. Erie County Water Auth.</u>, 2006 WL 1888556, at *6 (W.D.N.Y. July 7, 2006);

<u>Media All., Inc. v. Mirch</u>, No.1:09-CV-659 (LEK/RFT), 2010 WL 2557450, at *6 (N.D.N.Y. June 24, 2010).  Neither a policy nor a custom can be established based on a single instance of unconstitutional conduct by a municipality employee. <u>See</u> <u>City of Okla. City v. Tuttle</u>, 471 U.S. 808, 831 (1988).  To establish municipal liability, "plaintiff must establish that an identified municipal policy was the 'moving force [behind] the

22

constitutional violation.'" Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y.

2011) (quoting Monell, 436 U.S. at 694) (emphasis added). "Conclusory allegations of

a municipality's pattern or policy of unconstitutional behavior is insufficient to establish

a Monell claim." Devarnne v. City of Schenectady, No. 10-CV-1037, 2011 WL 219722,

at *3 (N.D.N.Y. Jan. 21, 2011) (quoting McAllister v. New York City Police Dep't, 49 F.

Supp.2d 688, 705 (S.D.N.Y. 1999)).

Plaintiff has failed to show, or even allege, the existence of an official policy or

custom.  Arguably, plaintiff is attempting to argue that the Greene County employees'

alleged conduct of retailing against him amounted to a practice "so widespread" that

the municipality had actual or constructive knowledge; however, even if the Court can

interpret plaintiff's amended complaint as setting forth such claim, as stated, is

conclusory and insufficient.  Dkt. No. 9 at 10.  It is not entirely clear how plaintiff is

contending the county employees have targeted him.  First, if plaintiff is arguing that

the employees have targeted him through criminal prosecution, for the reasons

discussed above, and in the May 1, 2019, Report-Recommendation & Order, such

claims may be barred by Heck or may be untimely.  Second, even if plaintiff was

"targeted" due to his status as an "internally displaced refugee," plaintiff has failed to

show that such status amounts to a protected class.  Third, as stated, for a Monell

claim to proceed, plaintiff must show the existence of an officially-promulgated policy

or custom, a policy so widespread that the County had actual or constructive

knowledge, a failure to train employees that rises to the level of deliberate indifference,

or an action or actions taken by an employee who is responsible for establishing

municipal policies relevant to the claims alleged.  Media All., Inc. v. Mirch, 2010 WL 2557450, at *6.  Plaintiff's amended complaint does not establish any such claims. Accordingly, it is recommended that plaintiff's Monell claim be dismissed without prejudice and with one final opportunity to cure the defects as set forth herein.

### E. Remaining Constitutional Claims

The May 1, 2019, Report-Recommendation & Order noted that the original complaint indicated violations of the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments, but that beyond his potential First Amendment claims, it was not clear how any named defendant violated the Fourth, Fifth, Sixth, Eighth, or Fourteenth Amendments.  Dkt. No. 5.  Thus, the undersigned recommended dismissal of these claims without prejudice for failure to meet the pleading requirements of Fed. R. Civ. P. 8 and 10.  Id. at 18.  In his amended complaint, plaintiff contends that his claims under the remaining constitutional provisions "are thoroughly real and substantive, as any jury will determine, and so far argued here to preserve these objections for this case and should appeal be necessary."  Dkt. No. 9 at 11.  Plaintiff further provides,

> I should not need to elaborate, but First Amendment is Free
> Speech (access to government), Fourth is my privacy
> (which doesn't exist in my example), Fifth is for being held
> without being indicted (the substance of false arrest), Sixth
> is the failure to provide counsel or evidence (the tape of the
> arrest), Eight involves Cruel and Unusual punishment
> (taking of my family and all property after terrorism, taking
> my public reputation, setting me in a homeless motel
> without transportation or ability to have a visitor), and
> Fourteenth "equal protection under the law," violated by the
> obtuse avoidance of the law and then arrest, banishment.

24

Dkt. No. 9 at 11.

To the extent plaintiff contends that his Sixth Amendment claim references the false arrest claim in connection with the January 2019 arrest, as indicated above, plaintiff has failed to overcome the Heck bar; thus, unless and until plaintiff demonstrates a favorable termination of the criminal charges by a court of law, the Court cannot address any claim that challenges the legitimacy of the arrest or charges. As to plaintiff's Fourth, Fifth, Eighth, and Fourteenth Amendment claims, these statements are conclusory, without any factual context, absent of any dates so that the court can assess timeliness, and also lack any discussion of those specific defendants involved.  Thus, again, these claims fully fail to satisfy the pleading requirements of Rules 8 and 10, which plaintiff is required to meet despite his pro se status.

Accordingly, insofar as plaintiff seeks to set forth claims under the Fourth, Fifth, Eighth, and Fourteenth Amendments, it is recommended that these claims be dismissed for failure to meet the pleading requirements of Fed. R. Civ. P. 8 and 10 and failure to state a claim upon which relief can be granted.  Insofar as plaintiff seeks to proceed under the Sixth Amendment for false arrest, it is recommended, as discussed above, that such claim be dismissed without prejudice for failure to overcome Heck.

Finally, insofar as plaintiff makes claims to Kaplan's apparent involvement in an eviction, dkt. no. 9 at 13, this claim must also fail for failure to meet the pleading standards of Rules 8 and 10.  Plaintiff provides no factual support or context for this allegation, nor does he explain how such conduct is violative of an enumerated constitutional right by a party acting under the color of state law.

25

### III.  Conclusion[6]

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that insofar as plaintiff's complaint may be attempting to

raise claims for false arrest, false imprisonment, and malicious prosecution, these

claims be **dismissed without prejudice and with <u>one final</u> opportunity to amend**

should plaintiff be able to overcome the <u>Heck</u> bar; and it is further

**RECOMMENDED**, that all claims against Shaun Groden, Kira Pospesel, and

Patrick Linger be **DISMISSED without prejudice and with <u>one final</u> opportunity to**

**amend** to demonstrate their personal involvement in violations of his constitutional

rights; and it is further

**RECOMMENDED**, that insofar as plaintiff's complaint may be interpreted as

claiming that Ed Kaplan violated plaintiff's (1) First or Fourteenth Amendment rights by

denying his FOIL requests; or (2) First Amendment rights by "opposing" his

applications for poor person relief, such claims be **DISMISSED with prejudice** for

failure to state a claim upon which relief can be granted; and it is further

**RECOMMENDED**, that insofar as plaintiff's complaint may be interpreted as

---

[6]    Plaintiff is again advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." <u>International Controls Corp. v. Vesco</u>, 556 F.2d 665, 668 (2d Cir. 1977), <u>cert. denied sub nom.</u>, <u>Vesco & Co., Inc. v. International Controls Corp.</u>, 434 U.S. 1014(1978); <u>see also</u> <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any second amended complaint, should the District Judge permit one to be filed, **must** include all of the allegations against each of the defendants against whom the case is going forward so that the second amended complaint may stand alone as the sole complaint in this action.  Any amended complaint may **not** reallege any claims dismissed by the Court with prejudice.

(1) claiming that defendant Ed Kaplan violated plaintiff's First Amendment rights by seeking and obtaining an order of protection as an act of retaliation, and/or (2) that the order of protection violates his First Amendment rights to petition the government for redress of grievances, such claim be **DISMISSED without prejudice and with opportunity to amend** as specified herein; and it is further

**RECOMMENDED**, that insofar as plaintiff's complaint attempts to set forth claims under the Fourth, Fifth, Eighth, Fourteenth Amendments, such claims be **DISMISSED without prejudice and with <u>one final</u> opportunity to amend,** for failure to meet the pleading requirements of Fed. R. Civ. P. 8 and 10 and for failure to state a claim upon which relief can be granted; and it is further

**RECOMMENDED**, that insofar as plaintiff's complaint attempts to allege that Kaplan violated his constitutional rights by "aiding an eviction," such claim be **DISMISSED without prejudice and with <u>one final</u> opportunity to amend**, for failure to meet the pleading requirements of Fed. R. Civ. P. 8 and 10 and for failure to state a claim upon which relief can be granted; and it i sfurther

**RECOMMENDED**, that insofar as plaintiff's complaint may be read as attempting to set forth a <u>Monell</u> claim against "The Municipality of Greene County," this claim be **DISMISSED without prejudice and with <u>one final</u> opportunity to amend**, as specified herein; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation & Order and permits plaintiff an opportunity to amend, plaintiff be given **thirty (30) days** from the date of filing of the District Judge's Order to file a

27

second amended complaint addressing only the claims this Court dismissed without

prejudice, and if plaintiff fails to file a second amended complaint within those thirty

(30) days, the case will be dismissed <u>without further order of the Court</u>; and it is

**ORDERED**, that, insofar as plaintiff seeks expedited review or service of the

amended complaint, dkt. no. 13, or service of such amended complaint prior to the

District Judge's review of this Report-Recommendation & Order, such claim is

**DENIED**, for the reasons set forth in the undersigned's June 18, 2019, text order.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to

file written objections to the foregoing report.  Such objections shall be filed with the

Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN

(14) DAYS WILL PRECLUDE APPELLATE REVIEW.  <u>Roldan v. Racette</u>, 984 F.2d 85,

89 (2d Cir. 1993) (citing <u>Small v. Sec'y of Health and Human Services.</u>, 892 F.2d 15

(2d Cir. 1989)); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1); Fᴇᴅ. R. Cɪᴠ. P. 72 & 6(a).[7]

Dated: July 12, 2019
       Albany, New York

Christian F. Hummel

Christian F. Hummel
U.S. Magistrate Judge

---

[7]    If you are proceeding <u>pro se</u> and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. Fᴇᴅ. R. Cɪᴠ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  <u>Id.</u> § 6(a)(1)(c).